UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| KAREN L. TAYLOR | ) | |
| | ) | |
| | ) | |
| v. | ) | NO. 2:04-CV-128 |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

## MEMORANDUM OPINION AND ORDER

This medical negligence case is before the Court on the defendant's motion for summary judgment, and the defendant's appeal of the order of the United States Magistrate Judge denying defendant's motion to exclude the expert opinion testimony of Dr. John Boys. [Docs. 42 and 91].

### I. FACTUAL BACKGROUND

The pertinent facts are as follows, and are largely undisputed. The decedent, Richard Taylor, presented himself to Dr. Paul Niner, M.D., who was practicing as a family physician at the Limestone Medical Center, a medical clinic which falls under the umbrella of the Public Health Service. Mr. Taylor was complaining of generalized joint pain when he first saw Dr. Niner in September of 2000. He returned to see Dr. Niner on February 14, 2001 complaining of right shoulder pain and difficulty in raising his arm. A shoulder x-ray ordered by Dr. Niner was non-diagnostic. On February 14, 2001, Mr. Taylor again returned to Dr. Niner, complaining of left leg and hip pain. He again

complained of similar pain on April 24, 2001. Dr. Niner ordered an x-ray examination of his lumbar spine, which was also non-diagnostic. On May 15, 2001, a MRI was performed on Mr. Taylor, which reflected a large metastasis relative to his spine and abdomen. As a result, Mr. Taylor was diagnosed with stage IV renal cell carcinoma, a type of cancer with a high mortality rate. It is undisputed that Mr. Taylor already had metastatic renal cell carcinoma by the time of his first visit to the Limestone Medical Center.

Ultimately, Mr. Taylor's cancer led to his death on April 26, 2002. While it is undisputed that Mr. Taylor's cancer would likely have resulted in his death, the plaintiff asserts that had treatment begun earlier, Mr. Taylor's quality of life would have been greater, and his life span would have increased. As will be further discussed in this opinion, it is this dispute, particularly the admissibility of plaintiff's proof in this regard, and whether that proof, if admissible, is sufficient to overcome summary judgment, upon which this case revolves.

## II. **STANDARD OF REVIEW**

Summary judgment is appropriate when "there is no genuine issue of material fact." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of proving that no material facts exist, and the court must draw all inferences in a light most favorable to the non-moving party. A court may grant summary judgment when the record taken as a whole could not lead a rational trier of fact to find for the non-moving

party. Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial. *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (citations omitted).

In accordance with long standing summary judgment principles, this Court must construe the evidence in this record most favorably for the plaintiff because she is the litigant opposing summary judgment. *E.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *Scott v. Clay County*, 205 F.3d 867, 871 (6th Cir.2000). As explained by the Sixth Circuit in *Scott*,

> "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... <u>The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor</u>.*" Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted). See also *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Adams v. Metiva*, 31 F.3d 375, 378-79 (6th Cir.1994). (emphasis added)

Id. at 871.

### III. DISCUSSION

#### A. The admissibility of Dr. Boys' opinion testimony.

On November 8, 2005, the defendant filed a motion to exclude the expert opinion testimony of Dr. John Boys, who was the decedent's treating physician following his cancer diagnosis. Quite obviously, Dr. Boys should be permitted to testify as a fact witness about his treatment of the decedent. However, the doctor went on to opine in his

3

deposition as to the effect earlier treatment would have had on the decedent's quality of life. It is this opinion to which the defendant objects, arguing that the plaintiff has failed to designate Dr. Boys as an expert witness, and that any opinions he might offer on the ultimate issues of the case should be excluded.

That portion of the testimony upon which Dr. Boys offers his opinion regarding the decedent's quality of life had he received earlier treatment is as follows:

> Q. Doctor, I'm asking you to, what do the records, I'm just asking to assume that his cancer were discovered as early as mid-September, 2001 would his quality of life with the regimen of pain control have been better throughout the period of time until he was finally diagnosed and treatment begun around the first of June?
>
> A. I can tell you with certainty his quality of life may, probably would be improved if his pain was managed at an earlier time, but again, when you, when you speculate on what the stage was then and how early and how far you can push the, push the envelope back, when he wasn't metastatic, these, these are all assumptive . . .
>
> Q. I understand.
>
> A. . . . Statements. Yes, I think that, that it's, it's fair to say that if a person is symptomatic and the sooner you start treating the symptoms and assessing the cause, then that would be a positive move in, in the patient's case, but length of life and longevity, these particular issues are elusive in palliative medicine. They are not discussed basically in hospice medicine. Quality of life, treatment plans for quality of life are discussed and, maintained, but as far as in an incurable situation, and Mr. Taylor by medical standards in 2002, '03, '04 was an incurable

4

person at the time of presentation to me.

The following testimony is also pertinent, for purposes of the defendant's motion:

> Q. All right. As far as, in your treatment of Mr. Taylor, I take it at the time you treated him you had no idea that there was any controversy, a lawsuit or anything like that . . .
>
> A. No, I did not.
>
> Q. . . . On the horizon?
>
> A. No.
>
> Q. And at that time, I take it, you developed no basic opinions relative to, to delayed diagnosis, for instance?
>
> A. No.
>
> Q. And you developed no opinions relative to delay in treatment or what might be causative effects in delay in treatment?
>
> A. No, I had no thought process at that time on this.
>
> Q. And that was not part of your central treatment of this patient, you were just trying to help his pain?
>
> A. Yes.

In seeking to exclude Dr. Boys' opinion, the defendant relies upon the unpublished Sixth Circuit opinion of *Mohney v. U.S.A. Hockey, Inc.*, 138 Fed. Appx. at 04 (6th Cir. 2005). In *Mohney*, a hockey player was rendered a quadriplegic following an incident

5

in which he skated head-first into the boards. The plaintiff filed a products liability action against the manufacturer of the helmet he was wearing at the time of his accident. The treating physician testified that, after reviewing video tapes of the incident, the plaintiff's injuries were consistent "with a facial impact and rotation into a crown presentation with a vertical load and hyper-flexion type of injury." No expert disclosure of the physician had been submitted. The Court of Appeals affirmed the opinion of the district court which excluded the opinion testimony of the physician finding that the physician rendered an expert opinion beyond the scope of his treatment of the plaintiff, an opinion which there was no evidence he had reached at the time of his treatment of the plaintiff.

The United States Magistrate Judge held that *Mohney* was inapplicable to the instant case even though there was no proof that Dr. Boys formed an opinion at the time of his treatment of the plaintiff regarding the effect of pain management treatment on the decedent's pain and suffering had his cancer been discovered and treated earlier. While the Magistrate Judge's opinion certainly takes into account the vagaries of the manner in which treating physicians often testify as to causation issues, this Court concludes that the better practice is to make a Rule 26(a)(2)(B) disclosure whenever a treating physician offers an opinion beyond that formed within the scope of his treatment. Nevertheless, this Court FINDS that, since Dr. Boys' opinion was elicited prior to the filing of a motion for summary judgment in a discovery deposition, the defendant has not been prejudiced by the failure to make a formal disclosure, and the order of the Magistrate Judge, for that

6

reason, will be affirmed.

B. **SUMMARY JUDGMENT**

The defendant has moved for summary judgment arguing that, even if the plaintiff can establish that the defendant's treatment fell below the standard of care, plaintiff cannot establish the necessary causal connection between either the defendant's negligence and the decedent's death, or a causal connection between the defendant's alleged negligence and the increased level of suffering the decedent endured as a result of delayed diagnosis.

It is clearly established under Tennessee law that in order for a plaintiff to carry her burden in a negligent treatment case, the plaintiff must establish by expert testimony that the defendant deviated from the recognized standard of acceptable practice, and that the deviation from the standard of care was the proximate result of the plaintiff's injuries. *Tenn. Code Ann.* § 29-26-115. "[M]otions for summary judgment are generally inappropriate in professional malpractice cases . . ." *Gambill v. Middle Tennessee Medical Center, Inc.*, 751 S. W. 2d 145, 146 (Tenn. Ct. App. 1998). However, "if the only issue is one which requires expert testimony and there is no expert response to an affidavit by an expert, then summary judgment is proper." *Id.* In order to sustain its burden, plaintiff must demonstrate that the "negligence more likely than not caused the injury." *Kilpatrick v. Bryant*, 868 S.W. 2d at 598-599 (Tenn. 1993). "Since a judgment cannot be based on conjecture or speculation, the probable cause of an injury must be shown to be reasonably certain, and not a mere likelihood or possibility." *Jennings v.*

7

*Case*, 10 S.W. 3d 625, 632 (Tenn. Ct. App. 1999).

The only expert presented by the plaintiff on the issue of whether the alleged negligence of the defendant lead to the untimely death of the decedent was from Dr. Michael Dube. The defendant, however, successfully moved for the exclusion of Dr. Dube's testimony on the issue of causation, and in an order entered by the United States Magistrate Judge on November 15, 2005, it was held that Dr. Dube may not offer the opinion that Mr. Taylor's life span would have been longer had his cancer been diagnosed earlier. Plaintiffs did not appeal the order of the United States Magistrate Judge, and the time for doing so has expired. The only other proof of causation on the issue of the decedent's life span offered by the plaintiff is the testimony of Dr. Stark, the defendant's expert witness, insisting that Dr. Stark testified that had the decedent been diagnosed earlier, his life span would have been longer. In reality, Dr. Stark testified:

> Q. Doctor, can you say with a reasonable degree of medical certainty that he would have died on the day he died if he had had his nephrectomy in September and received other treatment.
>
> A. I think he would have been close. On the day, I don't know, but it would have been very close. It would be within possibly a month or two, something like that.

Certainly, Dr. Stark's testimony as elicited by the plaintiff on cross examination does not rise to the level of being to a reasonable certainty, "and not a mere likelihood or

8

possibility." *See Jennings v. Case*, 10 S.W. 3d at 632. Therefore, given the plaintiff's lack of proof on the issue of causation relative to the decedent's untimely death, summary judgment must be granted in that regard.

Plaintiff also argues that, even if causation relative to the decedent's wrongful death cannot be established, the pain and suffering endured by the decedent prior to his proper diagnosis and treatment for cancer was an injury inflicted by the negligence of the defendant, for which the plaintiff should be permitted to recover. On this issue, the plaintiff offers the opinion of Dr. Boys who opines that the effect of the delayed diagnosis was that the decedent endured pain and suffering to a degree he would not have otherwise suffered. Plaintiff also offers the testimony of Dr. Dube, who, though excluded on the issue of causation of wrongful death, is permitted, pursuant to the order of the United States Magistrate Judge, to testify that the decedent's quality of life was effected by delayed diagnosis.

On this issue, the defendants argue that the plaintiff has gone beyond the scope of her complaint, submitting that this is simply a wrongful death case, and absent proof of causation on the issue of wrongful death, the plaintiff may not seek damages for a reduction in quality of life as a result of delayed diagnosis. Plaintiff submits that this issue is governed by the rule of *Rolen v. Wood Presbyterian Home, Inc.*, 174 S.W. 3d 158, (Tenn. Ct. App. 2005) in which the Tennessee Court of Appeals held that an estate could

9

pursue alternative theories of recovery against a nursing home for both wrongful death, and personal injury, with the understanding that they could not have double recovery for the same damages. The Court of Appeals held that the plaintiff could maintain a claim for personal injury due to negligence/malpractice and a separate claim for wrongful death based on basically the same injuries. Citing to *Tenn. R. Civ. P.* 8, the Court noted that a plaintiff may plead alternative theories of recovery, and that the election of remedies doctrine would prevent double redress.

The defendant argues that this case differs from *Rolen* in that the only issue is whether Dr. Niner's alleged failure to diagnose Mr. Taylor's cancer caused his death. However, quite to the contrary, a review of the plaintiff's complaint reflects that plaintiff has broadly plead a theory of negligence, stating "[a]s a result of negligence, Mr. Richard C. Taylor endured tremendous, conscious pain and suffering and, ultimately, death." Accordingly, the Court is of the opinion that *Rolen* is on point, and that there exists a sufficient dispute of fact regarding whether the alleged negligence of the defendant in delayed diagnosis of the decedent's cancer resulted in greater pain and suffering than the decedent would have otherwise endured.

Accordingly, the defendant's motion for summary judgment will be **GRANTED** in part, as to the plaintiff's claim for wrongful death, and will be **DENIED** in part, as to

the plaintiff's claim for pain and suffering resulting from the defendant's alleged negligence.

**SO ORDERED.**

ENTER:

s/J. RONNIE GREER<br>UNITED STATES DISTRICT JUDGE